| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NASSER KAMAL ALQUZAH (10), | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| PETITION OF MAY S. HASSOUNEH | ) | |
| _____ | ) | |

THIS MATTER is before the Court on the Government's Motion to Dismiss the petition in part and for partial summary judgment (Doc. No. 549) as to properties which have been preliminarily forfeited in this case. Petitioner is Defendant's wife. Except for Petitioner's partial interests in two real properties located in Kentucky and in one bank account, the Government moved to dismiss her petition for lack of standing or, in the alternative, for summary judgment.

For the reasons which follow, the Government's motion for partial summary judgment is GRANTED.

## I. BACKGROUND

Defendant was convicted at trial of conspiracy in violation of 18 U.S.C. § 371 to commit violations of 18 U.S.C. § 2314 (interstate transportation of stolen property) and § 2315 (receiving stolen property in interstate commerce), as well as money laundering conspiracy under 18 U.S.C. § 1956(h) and substantive money laundering crimes. The property consisted of cigarettes which were represented to be stolen as part of a "sting" operation by undercover law enforcement agents. See 18 U.S.C. § 21.

The following assets were listed in the Preliminary Order of Forfeiture (Nunc Pro Tunc) (the "Preliminary Order") filed herein on February 10, 2014, (Doc. 446), and have been contested by Petitioner:

Financial accounts.

> 1. First Federal Charleston xxxxxx8483.
> . . .
>
> 4. First Federal Charleston xxxxxx1906 (funds transferred from xxxxx1782).
>
> 5. First Federal Charleston xxxxxx8587.
>
> 6. Wells Fargo xxxxxxxx2464.
> . . .

The following real property (or a substitute *res*, if applicable).

> 1. 1609 Oakhurst Dr., Mt. Pleasant, SC.
>
> 2. 337 Whitfield Dr., Lexington, KY.
>
> 3. 1479 Boardwalk, Lexington, KY.
>
> 4. Any surplus proceeds following foreclosure by Wells Fargo Bank, N.A., on 3724 Covenant Road, Columbia, SC, as a substitute *res* for that property.

Financial accounts owned or controlled by Defendant.
. . .

> 2. Wells Fargo xxxxxxxx8779.

In addition, Petitioner has claimed certain other assets not listed in the Preliminary Order, which need not be addressed at this time.

For purposes of summary judgment, except as otherwise noted, the material facts appear from the record and are found primarily in (1) the Stipulations and Unopposed Representations for Forfeiture Hearing, which was filed on January 31, 2014, (Doc. 443-1), in connection with

sentencing; (2) the Government's Memorandum in Support of the present motion (Doc. 550); and (3) the exhibits supporting these two documents. Petitioner has not denied or challenged these facts, and they are therefore undisputed.

Petitioner's name appears on the title document for only one of the assets, a jointly-held bank account, although she did sign a mortgage for the real property located at 1479 Boardwalk, Lexington, Kentucky.

The Boardwalk property ("Boardwalk") was deeded to Defendant on January 24, 2006, and was refinanced on February 13, 2009. Regarding Boardwalk, the Government is seeking a partial summary judgment that would allow forfeiture of slightly more than two-thirds of the net equity value of this property, representing the approximate value of Defendant's interest. As a result of this forfeiture, the Government argues that the estimated value of Petitioner's interest, which is an inchoate dower interest under Kentucky law, would be released to her at the proper time. See 21 U.S.C. § 853(g) (authorizing the Court to "take any other action to protect the interest of the United States in the property ordered forfeited"). One such "other action," is contemplated by 18 U.S.C. § 983(d)(5) (in civil forfeiture, as to property in which an innocent owner holds a partial interest, authorizing the Court to sever property or to transfer property to the Government with compensation for the partial interest to be paid after liquidation), even though § 983(d)(5) is not directly applicable to criminal forfeiture.

Similarly, the house at 337 Whitfield Drive, Lexington, Kentucky, ("Whitfield Drive"), is titled solely in the name of Defendant. However, Petitioner also appears to have an inchoate dower interest in this property under Kentucky law. Therefore, the Court will allow the Government to sell this property, with the value of Petitioner's interest to be paid to her from the net proceeds of the sale.

The First Federal Charleston xxxxxx8587 account is a joint account in the name of Defendant "or" Petitioner. It was opened on February 6, 2010, which was after the charged conspiracy began[1] but before Defendant became involved.[2] The amount seized was $3,289.52. No other person has filed a petition regarding this account.

As to the remaining assets, title is held in the name of one or more persons or entities other than Petitioner.

The First Federal Charleston ("FFC") xxxxxx8483 account is held in the name of Rania, Inc., and associated with a Subway restaurant in South Carolina, identified as Subway 22320; the names of Defendant, Ali Alqaza, and Amer Quzah, but not Petitioner, appear on the signature card for this account, from which the sum of $1,755.93 was seized. Ali Alqaza and Amer Quzah have filed third-party petitions herein but have not asserted an interest in this account.

Similarly, the FFC xxxxxx1906 account is in the name of Dina, Inc., and associated with Subway 22598 as a restricted account (controlled by the Marshals Service) for funds transferred from FFC xxxxxx1782, the restaurant's operating account, which is also in the name of Dina, Inc. The names of Defendant, Ali Alqaza and Amer Quzah, but not Petitioner, appear on the signature card for FFC xxxxxx1782. The balance in this account on October 31, 2012, was $8,724.48. Quzah has filed a third-party petition to assert an interest in this account, which is pending, but Alqaza has not done so. More recently, according to the Government, the Marshals Service has reported that the account balance is $8,228.34, but additional rent and other Subway expenses may be paid out of this account until final resolution of all claims to this asset and the related restaurant.

The Wells Fargo xxxxxxxxx2464 account is titled solely in the name of Defendant. The

---

[1] See Bill of Indictment (Doc. 3), at 1.
[2] Defendant arguably first became involved in the conspiracy on or about May 10, 2011.

amount seized was $213.69.

The real property located at 1609 Oakhurst Dr., Mt. Pleasant, South Carolina, ("Oakhurst Drive"), is titled solely in the name of Defendant. This house is or has been the residence of Defendant, Petitioner, and their children. It was appraised at $495,000.00 and is subject to a mortgage which is in default, with a reported recent balance of $392,356.75. The Government and the lender, CitiMortgage, Inc., have agreed to a settlement of the mortgage interest, which was filed on December 8, 2014 (Docs. 544 and 545). Under this settlement, any remaining net equity value following forfeiture and satisfaction of the mortgage will stand as a substitute *res* for the value of the property.

Petitioner also asserts an interest in the commercial property located at 3724 Covenant Road, Columbia, South Carolina, titled in the name of Kamal, LLC. Wells Fargo Bank N.A. commenced foreclosure on this property. The Government and Wells Fargo agreed that any net proceeds remaining after foreclosure would stand as a substitute *res* for that property. However, the Government has represented, and Petitioner has not disputed, that there was no upset bid, and therefore no proceeds are available either for forfeiture or for Petitioner. As a result of the foreclosure, therefore, both the forfeiture and Petitioner's alleged interest in this property are now moot.

The Wells Fargo xxxxxxxxx8779 account is in the name of Miriam Adam LLC and associated with Subway 12311, located at Dorchester Square Shopping Center, North Charleston, South Carolina. Defendant sold this Subway to Shady Moustafa in March 2001. See Doc. 443-1, at 6. Defendant and Shady Moustafa are listed as "owners" on a signature card for this account dated December 20, 2007, but Petitioner's name does not appear on the card. The amount seized was $8,236.88.

## II. ALLEGATIONS BY PETITIONER

Petitioner states that she "has legal and possessory rights to much of the property listed on the Preliminary Order."  She alleges that she and Defendant were married in May 1997; that they have four children; that she is now the sole caregiver and provider for the children; that she "was in no way aware of" Defendant's criminal activity; that the seized accounts were both personal and business in nature and "belonged jointly" to her and Defendant; that all of the properties were acquired prior to "any allegation of criminal activity"; that the primary residence of Petitioner and the children is 1609 Oakhurst Drive, where "all of the tax bills and bank statements are sent"; that, "as Alquzah's spouse, Petitioner possesses a superior legal interest to the Government in any and all of the property and accounts seized"; and that, in the event of seizure and forfeiture, she "would be placed in dire straits and unable to provide for her family." Further, she states on information and belief that, "while unable to produce at this time, Petitioner believes the Government has bank documentation reflecting her ownership and interest" in the seized bank accounts.  Petition (Doc. 463) at 1-5.

To the extent that these allegations are factual in nature, they are either undisputed or, as explained *infra*, immaterial for purposes of summary judgment.  Petitioner's broad statements regarding her joint ownership and superior interest in the property are legal conclusions.  Her claim "on information and belief" that the Government has "bank documentation reflecting her ownership and interest in those accounts," apparently referring to some of the seized accounts, remains unsupported following discovery.  On the other hand, the Government's supporting exhibits (except as to First Federal Charleston xxxxxx8587, as already noted) show that the accounts listed in the Preliminary Order were held in the names of individuals or entities other than Petitioner.

## III. DISCOVERY

In response to interrogatories served by the Government, Petitioner stated that "almost all" of the properties and assets in question were acquired after she and Defendant were married in 1997. She worked "alongside and for" Defendant at Subway restaurants while raising their children. Tax returns were filed jointly, and they considered that their income was "shared between the two of them as spouses," regardless of who held title. More recently, since Defendant was convicted, she "has paid for the insurance, taxes, improvements and general upkeep of the properties." However, in response to the Government's requests to identify documents showing that she holds title to the assets in question, or that she provided funds to purchase or acquire those assets, Petitioner failed to do so. At most, she provided documents showing that during 2013 she made certain payments associated with the property, such as mortgage payments, taxes, insurance and lawn care.

In response to other interrogatories, Petitioner stated that she married Defendant on May 15, 1997, in Amman, Jordan; that they are still legally married; that she paid no dower but gave Defendant gifts and personal items with an approximate value of $1,000.00; that at the time of the wedding she had a "small personal savings and checking account" and some jewelry, which she still has; that she can provide no documentation of her subsequent income apart from their joint tax returns for 2008 through 2011; and that she has received no insurance payments, government benefits, inheritance or gambling income since they were married.

As to Petitioner's income, their tax returns filed jointly for 2008 through 2011 show earned income on Form 1040, Line 7, without any indication of what amounts were earned by Defendant and/or Petitioner, respectively, as follows:

2008       $2,031

|      |         |
|------|---------|
| 2009 | $3,855  |
| 2010 | $800    |
| 2011 | $5,878  |

In response to the Government's Interrogatory No. 11, requesting identification of any state statutes or other laws supporting her claim to a "spousal interest" in the subject assets, Petitioner responded:

> ANSWER:    Petitioner rests on the law and statutes cited in her original sworn Petition filed March 14, 2014.   Counsel for Petitioner reserves the right to continue research and analysis of the law and will provide written memorandum as deemed appropriate.

In her petition, however, Petitioner cited no law giving her a marital interest in any property, and she has failed to provide any such authority thereafter.  Petitioner is therefore apparently asking the Court to find that she has a legal interest in the subject assets for purposes of 21 U.S.C § 853(n)(2) and (6) without identifying any state law basis for such a claim. Moreover, to the extent she seeks equitable relief, Petitioner has cited no state statute or case that would grant her an interest in any asset on the basis of equity.

## IV. ANALYSIS

### A.  Summary Judgment

Rule 32.2(c)(1)(B) provides in pertinent part that, "[w]hen discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56.  Fed. R. Crim. P. 32.2(c)(1)(A) and (B).  Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  Anderson, 477 U.S. at 248.  An issue of fact is genuine if "a

reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. A court reviewing a summary judgment motion must view the pleadings and material presented in the light most favorable to the nonmoving party. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>see e.g.</u>, <u>Deyton v. Keller</u>, 2011 WL 4498837, at *5 (W.D.N.C. Sept. 27, 2011).

Although § 853(n)(4) contemplates a hearing as part of an ancillary proceeding in criminal forfeiture, such a hearing is necessary only where there are facts in dispute that must be resolved, and a claim lacking merit as a matter of law may be dismissed without a hearing. <u>See</u> Fed. R. Crim. P. 32.2(c)(1); <u>United States v. Schecter</u>, 251 F.3d 490, 493 (after a third-party petition was filed, both the government and the petitioner "filed motions for summary judgment"); <u>United States v. Martinez</u>, 228 F.3d 587, 589-90 (5th Cir. 2000); <u>United States v. DiDomenico</u>, 78 F.3d 294, 300 (7th Cir. 1996) ("Although evidentiary hearings in criminal cases are not governed by the Federal Rules of Civil Procedure, the provisions of those rules relating to summary judgment are applicable by analogy.").

## B. Applicable Law

### 1. Standing

Under 21 U.S.C. § 853(n)(2), a petitioner must allege facts sufficient to meet both constitutional and statutory standing requirements. <u>United States v. Timley</u>, 507 F.3d 1125, 1129-30 (8th Cir. 2007); <u>United States v. Loria</u>, 2009 WL 3103771, at *2 (W.D.N.C. Sept. 21, 2009). To establish constitutional standing, a petitioner must demonstrate an ownership or possessory interest in seized property. <u>Timley</u>, 507 F.3d at 1129-30. Statutory standing is "the authority provided by statute to bring a suit" and, to establish statutory standing, a petitioner must have a legal interest in seized property. <u>Id.</u>; <u>see also</u> <u>United States v. Oregon</u>, 671 F.3d 484,

490 (4th Cir. 2012); United States v. Jaynes, 2009 WL 129969, *2 n.1 (W.D.N.C. Jan. 20, 2009), (citing In re Mutual Funds Investment Lit., 529 F.3d 207, 216 (4th Cir. 2008)). A petition should be dismissed on the issue of standing if a petitioner has not asserted a "legal interest" in property subject to forfeiture. Oregon, 671 F.3d at 490 n.6, (citing CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 52 (4th Cir. 2011)).

## 2. Statutory Defenses to Criminal Forfeiture

Once standing has been shown, in order to prevail against the government's forfeiture claim, a petitioner must satisfy either subparagraph (A) or subparagraph (B) of 21 U.S.C. § 853(n)(6),[3] which sets out the standard by which the court will evaluate a third party's claim which, if satisfied, requires the court to amend the forfeiture order to accommodate that interest. United States v. Phillips, 185 F.3d 183, 186 (4th Cir. 1999).

Under § 853(n)(6)(A), a petitioner must establish that a "right, title or interest [in the forfeited property] was vested in the petitioner rather than the defendant or was superior to any right, title or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property . . . ." (emphasis added). This principle is rooted in the "relation-back doctrine" of § 853(c).[4] See also United States v. Hooper, 229 F.3d 818, 821-22 (9th Cir. 2000) (in a criminal forfeiture case involving proceeds, "to qualify for relief under § 853(n)(6)(A), claimants' legal interest, if any, must have been vested in Claimants at the time [the defendants] committed their crimes"; as to a subsequent transferee of criminal proceeds, "the transferee is protected only as a bona fide purchaser [under § 853(n)(6)(B)].").

---

[3] Section 853(n) is made applicable in this case by 18 U.S.C. § 982(b)(1).

[4] *See United States v. McHan*, 345 F.3d 262, 267-72 (4th Cir. 2003), for a discussion of the relation back doctrine and its legislative history, as well as the general legal structure of criminal forfeiture.

Under § 853(c), based on the trial evidence in this case, the Government's forfeiture interest in the subject property vested no later than May 10, 2011, when an undercover officer met with Defendant to discuss money laundering details. Prior to that date, except for the partial interests already discussed, Petitioner cannot show any basis for "superior title" under § 853(n)(6)(A). Therefore, Petitioner must satisfy § 853(n)(6)(B).

Under § 853(n)(6)(B), a petitioner must establish that it "is a bona fide purchaser for value . . . and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture . . . ." In general, the criminal forfeiture statutes have taken the concept of a bona fide purchaser for value "essentially from hornbook commercial law." See United States v. Lavin, 942 F.2d 177, 185 (3d Cir. 1991). "The good-faith purchaser exception developed over time in order to promote finality in commercial transactions and thus to encourage purchases and to foster commerce. It does so by protecting the title of a purchaser who acquires property for valuable consideration and who, at the time of the purchase, is without notice that the seller lacks valid and transferable title in the property." Id. at 186. From this background, the Third Circuit concluded that a corporate victim of embezzlement had given consideration to the defendant "inadvertently" rather than "advertently" and thus could not qualify as a bona fide purchaser. However, the court further noted that § 853(i) grants the Attorney General discretionary authority to protect the rights of innocent persons and commented that "third parties who fall outside of [§ 853(n)(6)], regardless of how sympathetic they are, must petition the Attorney General for relief." Id. at 186-87.

Petitioner argues that she is an "innocent third-party owner" theory under 18 U.S.C. § 983(d). Response at 5. This argument confuses criminal forfeiture and civil forfeiture by importing into criminal forfeiture the entirety of the statutory innocent owner defense for civil

cases, which was enacted as part of the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202, April 25, 2000 ("CAFRA"). However, despite similarities between § 853(d) and the second prong of the criminal statute in 21 U.S.C. § 853(n)(6)(B), CAFRA did not change the statutory defenses to criminal forfeiture, and there is no "innocence" language in the first prong of the criminal statute, 21 U.S.C. § 853(n)(6)(A). See generally B. Frederic Williams, Jr., & Frank D. Whitney, Federal Money Laundering: Crimes and Forfeitures, Appendix A § 1.2.1.7 (2001 supp.) (discussing innocent owner defense as part of CAFRA overview); see also Stefan D. Cassella, Asset Forfeiture Law in the United States § 23-14(d) (2d ed. 2013) (citing United States v. Hooper, 229 F.3d 818, 822 (9th Cir. 2000), for the proposition that the pre-CAFRA innocent owner defense to civil forfeiture found in United States v. A Parcel of Land (92 Buena Vista), 503 U.S. 111 (1993), "has no relevance to criminal forfeiture and the rights of third parties in the ancillary proceeding"). Under § 853(n)(6)(A), therefore, a third party holding "superior title" will prevail, regardless of innocence, see, e.g., United States v. Nava, 404 F.3d 1119, 1136 (9th Cir. 2005) (granting petition despite evidence that defendant's unindicted daughter, who owned the properties under state law, was "herself was involved in illegal drug activities on these properties");[5] and an innocent third party without such an interest cannot prevail. The inquiry under the first prong of the criminal statute concerns property interests, not innocence.

In other words, criminal forfeiture has no such category as an "innocent third-party owner" of pre-existing property interests, because the concept does not appear in the statute. In this case, Petitioner's alleged innocence has no relevance to a defense under § 853(n)(6)(A), which says nothing about knowledge or notice of criminal activity.

---

[5] Nava reflects certain differences between Ninth Circuit and Fourth Circuit law, but those differences do not affect this principle.

As to § 853(n)(6)(B), which protects a bona fide purchaser for value without notice, Petitioner has not seriously argued that she is a BFP.  Moreover, she could not prevail on such an argument, because she has identified no "arm's-length transaction" or exchange of "equivalent value" between herself and Defendant and thus cannot qualify as a BFP, regardless of her "innocence."  See United States v. Munson, 477 Fed.Appx. 57 at *67 (4th Cir. 2012).

**3. State Law**

Although the Fourth Circuit has "occasionally departed from state law" in "circumstances where there is evidence a defendant has manipulated state law property rights to shield assets," the "norm" is to look to state law in determining whether a petitioner has a legal interest in forfeited property.  Oregon, 671 F.3d at 490 n.7; see also Timley, 507 F.3d at 1129; Schecter, 251 F.3d at 494-95 (4th Cir. 2001).

Petitioner argues that the "norm" cited by the Fourth Circuit leaves room in a particular case to depart from state property law.  In this case, Petitioner urges such a departure because she has an equitable interest, in that it would be "unjust to ignore the contributions made by a wife and mother of four . . . after 18 years of marriage."  In response, the Government focuses on the Fourth Circuit's language limiting departures from state property law to cases "where there is evidence a defendant has manipulated state law property rights to shield assets from the reach of the forfeiture law."  Oregon, 671 F.3d at 490 n.7, citing United States v. Morgan, 406 F.3d 284, 290-91 (4th Cir. 2000).

In one case from this district, not cited by Petitioner, a convicted defendant's wife was held to have alleged facts sufficient to establish standing where the assets in question were purchased with her separate funds before the criminal activity took place, but title was placed in the defendant's name.  See United States v. Nelson, No. 1:12CR88-MR, 2013 WL 4212002

(W.D.N.C. 2013).  However, Petitioner has made no allegation here, nor has she produced any evidence, regarding an independent source of funds in an amount which would be material.  Nelson is therefore distinguishable on the facts.

In this case, moreover, as the Government correctly observes and the Court recalls, "although the trial evidence showed that Defendant manipulated financial transactions and bank records in the course of money laundering activity, there is no evidence that he was manipulating the title to the real property or to the other assets now subject to forfeiture, in order to avoid forfeiture."  Government's Reply (Doc. 562), at 2-3 (emphasis original).  Therefore, even allowing for an occasional departure from state property law as contemplated by Oregon and Morgan, the evidence here does not support such a departure.

As to this petition, all of the assets are located in either South Carolina or Kentucky, and Petitioner has identified no real property law in either state which would establish her legal interest in any asset.  However, because some of the properties are titled to Defendant (as well as other entities and individuals), Petitioner's standing theory is apparently that Defendant's interest in each asset constitutes "marital property" in which she has a "spousal interest."

### a. South Carolina

Regarding South Carolina property, the Fourth Circuit has expressly confronted this issue and found that a criminal defendant's wife had no property interest based on alleged marital rights:

> Mrs. Schifferli appeals the district court's denial of standing, arguing that she has an equitable interest in the property under South Carolina's Equitable Apportionment Act.  Section 20-7-471 of this Act states that "[d]uring the marriage a spouse shall acquire . . . a vested special equity and ownership right in the marital property as defined in § 20-7-473 . . . ."  S.C. Code Ann. § 20-7-471 (Law Co-op. 1986).  However, while this "ownership right" is acquired during marriage, "marital property" does not exist until "the date of filing or commencement of marital litigation . . . ."  S.C. Code Ann. § 20-7-473.

> Consequently, "[t]he 'ownership right' in 'marital property' . . . cannot attach until that property is created by the filing of marital litigation." *Prosser v. Pee Dee State Bank*, 295 S.C. 212, 214, 367 S.E. 2d 698, 700 (1988). Since Mrs. Shifferli has not filed or commenced marital litigation, she has no interest in the property at stake. Thus, her claim of standing fails.

United States v. Schifferli, 895 F.2d 987, 991 (endnote at asterisk) (4th Cir. 1990).

Applying similar statutory schemes from other states in both civil and criminal forfeiture actions, district courts in the Fourth Circuit have issued rulings similar to Schifferli. In a civil forfeiture case from West Virginia, one court held, in the context of a spouse's petition for proceeds of crime held in the name of the defendant, that an "unvested marital estate is insufficient to confer Article III and statutory jurisdiction." United States v. Two Real Properties Situated in Bluefield, 2009 WL 3181453, at *7 (S.D. W. Va. Sept. 29, 2009) (decided based on West Virginia law; collecting cases from four circuits). Similarly, another court has rejected a spouse's claim to a marital interest in funds forfeited as substitute property in a criminal case, finding the alleged interest to be inchoate at the time of the crime since the divorce decree had not yet been entered. United States v. Norton, 2002 WL 31039138, at *4 (W.D. Va. Sept. 3, 2002) (discussing marital rights under Tennessee law).

In a civil forfeiture case governed by North Carolina law, a district court held that "[petitioner] cannot establish that she is the owner of the [forfeited] Camper simply because it would be classified as marital property if the Knights were to separate and seek equitable distribution of their marital property." United States v. 1999 Starcraft Camper Trailer, 2006 WL 2921722, at *2 (M.D.N.C. Oct. 10, 2006), (citing Hearndon v. Hearndon, 510 S.E. 2d 183, 185 (N.C. App. 1999). In North Carolina, therefore, "[e]quitable distribution is a statutory right granted to spouses under G.S. 50-20 which vests at the time of separation. G.S. 50-20(b). This

vested right does <u>not create a property right</u> in marital property [ . . . . ]" <u>Hearndon</u>, 510 S.E. 2d at 185 (emphasis added).

In light of these decisions from South Carolina and other states with similar marital property laws, the Court sees no basis for Petitioner's argument that these laws "are meant [only] for classification and categorical purposes.  In other words, the property . . . will not be officially classified as separate, divisible or marital until an action is filed  . . . .  The rights already held in the property are not suddenly changed once that action commences." <u>Response</u> at 4.  Rather, regardless of whether a spouse's marital property rights are described as unvested, inchoate, or by some other similar term, such rights generally do not amount to an ownership interest in specific property for purposes of standing to challenge federal forfeiture unless and until there is an event, such as separation, that triggers the statutory authority for the state court to make an equitable distribution.

Regarding Oakhurst Drive, Petitioner offers no state law basis for her alleged interest.  Her name is not on the deed, and she cites no South Carolina real property law.  She is left to depend entirely on South Carolina marital property law, which does not give her a legal interest in the property under <u>Schifferli</u>.

Similarly, Petitioner has identified no state law basis for an inference that she has an ownership interest in the bank accounts in question.  Except for the First Federal Charleston 8587 account, her name does not appear on the accounts, and she makes no claim that her earnings can be traced to any specific account.  Instead, she relies entirely on her "spousal rights" to those assets.  In the Fourth Circuit, any such rights are precluded by <u>Schifferli</u>.

Petitioner reported earnings for 2008 through 2011 in the total amount of $12,564, which is a small sum compared to the amounts Defendant was moving through multiple bank accounts,

and she makes no attempt to trace her earnings into any asset.  In 2013 she also spent small amounts on taxes, insurance and lawn care, as well as on some mortgage payments.  Gratuitous payments for the benefit of a family member have been held inconsistent with the status of a bona fide purchaser for value under § 853(n)(6)(B).  <u>See</u> <u>Munson</u>, 477 Fed.Appx. 57 at *67 (4th Cir. 2012).   Moreover, even the act of signing a secured note creates no legal interest on the part of the signer in the underlying collateral.  <u>See</u> <u>United States v. Morgan</u>, 2002 WL 922107 *2 (E.D. Pa. 2002), cited in <u>United States v. Real Property Located at 6124 Mary Lane Drive, San Diego, California</u>, 2008 WL 3925074 at *3 (W.D.N.C. 2008) (Mullen, J.) (affirmed on appeal by <u>Munson</u>).

Finally, Petitioner has failed to show that she made any payments before Defendant was arrested in November of 2011.  After that point, she was on notice of the criminal charges in this case, as well as the forfeiture notice in the indictment.  Therefore, regarding any possible "after-acquired interest" in the properties, whether in South Carolina or in Kentucky, Petitioner cannot be a bona-fide purchaser for value who "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture" for purposes of 21 U.S.C. § 853(n)(6)(B).

In sum, the rule of <u>Schifferli</u> applies for all of the assets in South Carolina.  For South Carolina property, as is the case in other states with similar marital property statutes governing divorce proceedings, it appears that Petitioner has no "spousal interest" because she has made no allegation and offered no evidence of a legal separation or the filing of a divorce action.  Therefore, her only legal interest in any asset is her joint interest in the 8587 bank account.

**b. Kentucky**

Kentucky law appears to operate differently, with the issue turning not on divorce proceedings but, for the two assets in question, on real property law.  In Kentucky, the common

law dower interest in real property has not been abolished, as it has been in North Carolina and other states. See generally 1 Patrick K. Hetrick and James B. McLaughlin, Jr., Webster's Real Estate Law in North Carolina §§ 4-9 and 7-20 (5th ed.1999). Rather, dower has been codified by statute. The applicable Kentucky statute provides in pertinent part as follows:

> After the death of the husband or wife intestate, the survivor shall have an estate in fee of one-half (1/2) of the surplus real estate of which the other spouse . . . was seized of an estate in fee simple at the time of death, and shall have an estate for his or her life in one-third (1/3) of any real estate of which the other spouse . . . was seized of an estate in fee simple during the coverture but not at the time of death, unless the survivor's right to such interest has been barred, forfeited or relinquished.

Ky. Rev. Stat. § 392.020. According to the caption for this statute, Kentucky "defines" dower by this language.

Neither party has cited a federal forfeiture case construing the Kentucky statute. District courts in the Sixth Circuit (which includes Kentucky) have treated similar property interests under Ohio law as "inchoate" during the husband's life, with the result that the wife's marital interest is not a defense to forfeiture. See United States v. Josic, 2008 WL 5234386 (N.D. Ohio 2008); United States v. Jamieson, 2007 WL 275966 (N.D. Ohio 2007). On the other hand, there is reason to believe that a federal district court in Kentucky would reach a different result.

Preliminarily, Kentucky law governs dower rights to real property located in Kentucky, because "the title to real estate is governed by the law of the place where it is situated, and solely by such law," even regarding "a widow of an owner of land in this state, who dies a citizen and resident of another state . . . ." Perry v. Wilson, 183 Ky. 155, 208 S.W. 776, 780 (Ky. 1919). Presumably, therefore, the fact that Defendant and Petitioner are residents of South Carolina would make no difference.

In the common law of the various states, there is a split of authority regarding the nature of inchoate rights of dower, and thus a federal issue arises whether the right is so substantial that a wife is entitled to compensation "where lands belonging to the husband have been taken in condemnation proceedings." United States v. Certain Parcels of Land, Etc., 46 F.Supp. 441, 443 (D.Md. 1942) (applying Maryland law).  Under the majority view, dower is not so substantial, because "it is, at best, a contingent claim incapable of present valuation" and therefore "is outside the pale of constitutional mandate that property shall not be taken without due process of law."  Id.; see also Shelton v. Shelton, 83 S.E.2d 176, 177 (S.C. 1954) (following the "overwhelming weight" of the majority view in South Carolina eminent domain case). Kentucky, however, appears to have taken the minority view.  In Kentucky, "[t]he only way that the wife can lose her dower is either to sell it, forfeit it, or die and leave it.  If she sells or forfeits dower, it must be done in the manner provided for disposal of real property.  A widow's rights [sic] of dower is an individual interest, and not merely a lien.  The right vests at the time of marriage, or as to subsequently acquired property at the time of acquisition by husband, and is a vested interest."  Wigginton v. Leech's Adm'x, 285 Ky. 848, 149 S.W.2d 531, 533 (Ky. App. 1941) (citations and internal quotation marks omitted).  Analyzing this dower right under both the case law and Kentucky statutes, a federal district court has held that a wife was entitled to share in the award from a Tennessee Valley Authority condemnation proceeding.  United States v. Spiceland, 52 F.Supp. 40 (W.D. Ky. 1943).

While the law of eminent domain is not necessarily controlling for purposes of federal asset forfeiture, it arguably provides the closest principles that can be applied by analogy. Consequently, in contrast to marital property interests in South Carolina and North Carolina, a dower interest in Kentucky real property under § 392.020 is the type of inchoate property right

that would constitute a "legal interest" for purposes of standing under 21 U.S.C. § 853(n)(2).  In addition, because Petitioner acquired her interest in the two Kentucky properties before the Defendant's criminal activity in this case, when the Government's forfeiture interest vested under § 853(c), she is also able to satisfy § 853(n)(6)(A) as to those assets.

Therefore, for purposes of both standing and a defense to forfeiture under 21 U.S.C. § 853(n)(6)(A), the Court accepts the Government's position and recognizes Petitioner's interest in Boardwalk and Whitfield Drive under Ky. Rev. Stat. § 392.020, as well as her joint interest in the First Federal Charleston xxxxxx8587 account.  Therefore, the motion for partial summary judgment is GRANTED.  Subject to the issue of valuation, the preliminary order will be amended to account for Petitioner's interests.

## V. DIVISION OF JOINTLY-HELD PROPERTY

Unlike 18 U.S.C. § 983(d)(5), which provides three specific options for dealing with partial interests in civil forfeiture, 21 U.S.C. § 853 does not expressly address the issue of partial interests following a criminal forfeiture order.  In criminal cases involving partial marital interests, some older cases allow the government a lien for the defendant spouse's interest in a tenancy by the entireties.  See United States v. 2525 Leroy Lane (Leroy Lane I), 910 F.2d 343, 351-52 (6th Cir. 1990).  In the event of a subsequent divorce, however, the government may get nothing.  See United States v. 2525 Leroy Lane (Leroy Lane II), 972 F.2d 136, 138 (6th Cir. 1992).  Other cases have allowed forfeiture to proceed and provided for a division of the property.  See United States v. Fleet, 498 F.3d 1225, 1230-31 (11th Cir. 2007) (allowing forfeiture of defendant's residence as a substitute asset, notwithstanding tenancy by the entireties); United States v. Totaro, 345 F.3d 989, 999 (8th Cir. 2003) ("state property law cannot trump the Government's right to forfeiture of all of [defendant's] interest"; court must determine

how much of the property was defendant's and how much was his wife's and divide it accordingly); United States v. Kennedy, 201 F.3d 1324, 1334 (11th Cir. 2000) (government's interest in tenancy by the entireties can be realized when marriage ends, rejecting Leroy Lane II).

As noted previously, the criminal forfeiture statute provides for the court to "take any other action to protect the interest of the United States in the property ordered forfeited." 21 U.S.C. § 853(g). This language is broad enough to encompass the "other actions" expressly provided for civil forfeiture in § 983(d)(5), as well as the kind of actions taken in cases such as Fleet, Totaro, and Kennedy,[6] which may be applied by analogy to similar factual situations for the division of jointly held property in criminal forfeiture cases. See generally Stefan D. Cassella, Asset Forfeiture Law in the United States § 24-10 (2d ed. 2013). Therefore, the Government's request to proceed with forfeiture and pay Petitioner the value of her interests following sale of the Kentucky properties is GRANTED.

## VI. VALUATION

Since Defendant is still living, Petitioner's statutory dower interest in the Kentucky properties appears to be limited to a life estate in one-third of the net equity value of those properties. Accordingly, Court will allow the parties thirty days to discuss whether agreement is possible as to a dollar amount representing the value of that dower interest. Similarly, the parties may discuss and stipulate, if possible, whether her interest in the bank account is one-half of the value of the seized funds, or some other amount. If no agreement can be reached, the Court will set the matter for an evidentiary hearing on this issue.

## VII. CONCLUSION

On the undisputed facts in this case, Petitioner cannot establish standing to contest the

---

[6] Although Fleet, Totaro, and Kennedy involve criminal forfeiture, they do not specifically address the application of § 853(g).

forfeiture, nor can she meet her burden to satisfy either of the statutory defenses in 21 U.S.C. § 853(n)(6)(A)-(B).  Subject to the exceptions noted and valuation of Petitioner's interests as stated in the preceding paragraph, with the value of those assets to be released to Petitioner at the appropriate time, the Government is entitled to proceed with forfeiture.  The Government's motion for partial summary judgment is therefore GRANTED.

**IT IS SO ORDERED.**

Signed: March 13, 2015

Frank D. Whitney
Chief United States District Judge